**104**

William J. Brown
vs.                    } Eq. No. 2948
Rennsaler L. Curtis,
Receiver of the
Atlantic National Bank

RESCRIPT

February 25, 1918

TANNER, P. J.   This is a bill in

which the complainant seeks an accounting of the respondent for the value of bonds alleged to have been wrongfully sold by said respondent and in which the complainant claims an equity.

The complainant was at one time the owner of two bonds of the Shawmut Finishing Company secured by a trust mortgage. The Atlantic National Bank was the owner of a majority of the bonds secured by said mortgage.

The property of the Shawmut Finishing Company was sold at receiver's sale under bankruptcy proceedings and the property was bought in for the Atlantic National Bank for the sum of $60,000. After some intermediate transactions, the property was finally sold by the Atlantic National Bank to the Imperial Printing & Finishing Company, and bonds of said Company to the amount of $100,000 received in payment. The respondent receiver resold said bonds upon an order of the United States Bankruptcy Court for the sum of $54,754.56, said sum being the proceeds of the sale not only of said bonds but of the notes of one Priest and stock pledged by him.

The respondent claims that the original bankruptcy sale of the property of the Shawmut Finishing Company cut out all interest of the complainant in the bonds or property of said Company. The cases cited by the respondent, however, all contain the condition that such a sale must not be brought about by the purchasing bond-holder or be in any way under his control. We are satisfied, however, upon the testimony of Mr. Thornley, counsel for the Union Trust Company which was trustee under the mortgage securing the bonds, that the receiver's sale was brought about by the purchasing bond-holders; that it was in pursuance of a plan to fore-

**105**

close the bond-holders' interest in the

property and to enable the purchasing bond-holders to resell the estate. Under those circumstances, we think that the complainant's claim is correct that he had an equity in the property purchased and its proceeds which entitled him to share in any profit made out of the transaction.

Ring. vs. New Auditorium Pier Co., 77 N. J. Eq. 422.

The complainant claims that the subsequent sale by the respondent was an unfair sale which sacrificed the bonds; that this amounted to a conversion of the bonds which entitles him to an accounting upon the theory of the highest value that the bonds would have brought since said sale.

The receiver of the Atlantic National Bank was, however, the owner of the bonds charged merely with an equity in favor of the other bond-holders. There was no reason why he should hold the bonds indefinitely, and we are satisfied that when he sold them in 1914, there was no reasonable expectation of any increase in the value of the property securing the bonds or of the bonds themselves. We are further satisfied that every reasonable effort was made to properly advertise the bonds for sale so as to secure a fair price. The receiver had an obligation to realize the proceeds of his receivership with all reasonable dispatch, and he showed no undue haste in so doing.

The complainant makes much of the fact that the bonds were sold in connection with notes of one Priest, which notes were said to be of little value. We see nothing in this to injure the sale of the bonds, since no one was obliged to pay more for the notes than they were worth. The bonds and notes were purchased by said Priest, who was interested in the ownership and management of the Imperial Printing & Finishing Company.

The plaintiff further claims that even upon the sale actually made, a profit was made upon the transaction. He, however, arrives at this result by adding to the proceeds of the sale the amount of interest received upon the bonds. He neglects, however, to allow the respondent any interest upon the $60,000 invested in the original purchase of the plant at the first receiver's sale, or for any expense connected with the handling of the bonds or property since. Under all the authorities, however, it is clear that he can not participate in the proceeds of the sale without also participating in the expense of the purchase and handling of the property. Even if we apportion the full price of the sale by the respondent to the bonds themselves and added all the interest claimed by the complainant, this would amount to $67,489.56;

**106**

while, if we added to the $60,000 purchase price of the bonds at the original sale of 5 per cent on the said purchase price, being $10,500, this would amount to $70,500. While this reckoning is as favorable to the complainant as it could be, there would still be no profit in which he would be entitled to share.

We therefore find that the complainant has failed to sustain his bill.

For plaintiff: W. J. Brown and A. C. Matteson.

For defendant: Mumford, Huddy & Emerson and Wilson, Gardner & Churchill.